Case number 16-1299, Orton Motor, Inc., DBA, Bordens, Bagley, Petitioner v. United States Department of Health and Human Services. Ms. Dennehy for the Petitioner, Ms. Robero for the Respondent. May it please the Court, Joanna Dennehy for the Petitioner. I'd like to reserve two minutes for rebuttal. In the provisions of the Tobacco Control Act relating to retail sales, Congress directed the FDA to employ a graduated enforcement scheme, wherein penalties for multiple violations shall increase from one violation to the next. Congress specified a scale of increasing penalties for each successive violation, and it directed that the FDA cannot charge a retailer with a violation unless the retailer has received notice of all previous violations at that outlet. In this way, Congress ensured that each increased penalty level applies only if a retailer continues to violate the law, despite being penalized on previous occasions. The FDA's guidance violates. So is your point that in 2013, when the agency found two violations in one transaction, that it would have had to, under your view, it would have had to first, before it could, say, it could have imposed a violation, it could have found a violation, for example, for selling to someone under 16, right? Correct. But it couldn't, it would have to warn the store before it went ahead and assessed a violation for not asking for the person's age, right? That's correct. And you think the statute's unambiguous about that? We do. And why is that? Tell me what language. Is it the word each? It's a few provisions, Your Honor. First, subsection 103Q1E directs that penalties for multiple violations shall increase from one violation to the next. You have to read that in context, and it appears right after subsection 103Q1D, which says that a person may not be charged with a violation at a particular retail outlet unless the secretary has provided notice to the retailer of all previous violations at that outlet. Read together, those provisions show that Congress wanted to Maybe it depends on what the word previous means, right? Maybe not word previous, they're simultaneous. Yes, in some ways you could say that these violations occur simultaneously, but Well, once you acknowledge that, it's a little hard then to say the statute's unambiguous. But you have to read that provision in light of the direction in 103Q1E that penalties shall increase from one violation to the next. Well, but again, it depends on your definition of violation. Correct. If you can have two violations simultaneously, then you have two violations. And there's nothing in the Act that tells you how to count violations, is there? I mean, it doesn't address that issue. The Act does not say this is how to count violations. And then there's the case, isn't it? I mean, isn't that the issue before us is, did the agency properly count the violations here? And if you just acknowledge that the statute doesn't direct them to do that, then I may have misspoken. I meant the statute does not use the words count. But this statute does direct the agency to assess violations so that the penalty increases from one violation to the next. It also directs that this agency cannot assess a violation unless it has provided notice of all previous violations. So read together, those provisions really show that Congress intended there to be a substantive limit on the agency's ability to charge more than one violation at a time and assess more than one penalty at a time. You know, I see your point about two violations from one transaction. But suppose instead of the facts of this case, the inspector saw the clerks sell to a minor and charge one violation and also notice that there was a vending machine selling cigarettes on the other side of the store and charge two. Could they not do that under your theory? They could not. Why would Congress say that? Because Congress Completely unrelated violations. What sense does that make? Congress wanted retailers to have multiple opportunities to receive notice that they were in violation of some regulations under the Act and have an opportunity to take action to correct whether by But these are totally different regulations. I get your point about, look, if you're selling to minors, you should be notified about that. But why? What possible reason would Congress have had to say, before you can find a violation for operating a vending machine, you have to give them notice that they also violated the regulation prohibiting sales to underage people? Again, just But what sense does that make? It makes sense to the extent that if you read the statute otherwise, as the government is reading it here, to impose no limit on its ability to charge multiple violations in a single proceeding, you could be in a situation where during the first proceeding in which a retailer receives a meaningful opportunity to be heard on the violations, it is already facing the maximum penalty up to and including a no-sale order. For example, on page 2 of its brief, the government suggests that if an inspector were to view a retailer selling cigarettes to three minors, it would be appropriate to assess all of the penalties involved there. So, for instance, if each of those sales involved a failure to check ID and a sale to a minor and the retailer had already received a warning letter for the same violations, and under the agency's policy it would not receive a hearing at that time, it would have the five or more repeated violations that would be necessary to assess a no-sale order, which would mean that the retailer would be forbidden from selling tobacco products in its establishment. As we set forth in our brief, it could be devastating and is devastating to these businesses. Turning back to the warning letter, however, as we argued in our brief, the FDA is simply incorrect that a warning letter issued after a first violation is not a penalty that would require it to first hold a hearing under subsection 1C. I have the same question about that I did about your other one. So where do you find that in the statute? So this comes from subsection 103Q2A, little I, big I. This is the graduated penalty scale. And so the penalty scale directs that the amount of the civil penalty shall not exceed, in the case of the first violation, zero dollars together with the issuance of a warning letter to the retailer. So Congress specifically contemplated that the penalty for the first violation would be a warning letter. And Congress also directed that before the FDA could impose a penalty, it would have to provide process in the form of a hearing conducted pursuant to subsection 103Q1C. So if you're right, then let's suppose your client had believed that it really, that the facts stated in the warning letter were wrong, that there really had not been a violation on the date in question. Then under your reading of the statute, your client would be entitled then to prove its case so that then if the ALJ agreed, then the warning letter would be rescinded and the FDA would not be allowed to do a follow-up compliance within the meaning of the statute, right? That's correct. So if they did come back and found a violation later, they would only be able to issue a warning letter and not a second violation, so to speak. That's correct. So if your reading of the statute is correct, then why weren't you required to make this argument when you received the warning letter as opposed to after they come back on a subsequent occasion? Right. So the warning letter itself would not put a reasonable retailer on notice that it had a right to demand the hearing on the time. The warning letter, which is set forth in the joint appendix at pages 1 and 2, provides only that a retailer may respond to the letter and say what it's going to do to correct the violations. It provides no indication that a retailer could request a hearing at that time, and, in fact, the FDA has taken the position that this is not a final agency action that would entitle the retailer to a hearing at that time. I understand and I agree with you that the warning letter doesn't give you any sort of an indication that you can appeal or challenge it. But why does the text of the warning letter govern what your rights are or what's supposed to happen? Why aren't you required at that point, if your argument is correct, to file an appeal with the departmental appeals board? Right. So I think, again, these are not sophisticated businesses. They receive a warning letter that doesn't indicate that they have any right to a hearing. I thought your argument was that they were entitled to a hearing before the warning letter. That's also correct. Right. So when you answer Judge Wilkins' question, I think you need to respond at both levels. Number one, where do you find the right to a hearing prior to the issuance of a warning letter? And then second, if not, where does it come from for post-warning letter? So the right to a hearing prior to the issuance of a warning letter comes from Section 103Q1C, which states that the agency must provide a hearing pursuant to the procedures established through the regulations and then providing for an expedited procedure for the administrative appeal of an alleged violation. Of an alleged violation. Correct. So it's a little hard to – I mean, I see your point. I don't see how that language gets you a pre-warning letter issue. It's the warning letter that is the alleged violation. So at a minimum, at the most you get is a hearing after the warning letter. So to the extent that the – well, first, to the extent that the agency is taking the position that it can wait two years, for example, to provide you a hearing on the violations alleged in the warning letter, that's just not tenable. Why? I'm sorry, excuse me? Why? Why? Because retailers – the type of defense that a retailer might raise in an action like this, you know, they would rely on employee testimony. They might rely on the security tapes to show that the employee had, in fact, checked ID. And, you know, two years later it is virtually certain that that evidence will not be available. Is that a constitutional argument you're making? It's – you have a right to a meaningful, full and fair hearing under the statute, just under general administrative due process principles. And so we would contest that that's where the right comes from. I'm sorry, I'm very over time, so thank you for your time. Anything else? No. Okay. Then we'll hear from the government. May it please the Court, Megan Barbero on behalf of the U.S. Department of Health and Human Services. Orton Motors' reading of this statute takes an act with a common sense and public health purpose of protecting minors and makes it nearly impossible for the agency to effectuate that goal. Under Orton's view, no matter how egregiously a tobacco retailer is violating the tobacco sale restrictions, the agency's hands are tied and it can charge only one violation. In other words, if an FDA-commissioned inspector walks into a convenience store and observes a vending machine directly ahead of him, a sign in the corner offering free samples of cigarettes, an employee who is opening packages of cigarettes to sell individual cigarettes, and another clerk who is selling tobacco to the entire fifth-grade class from the elementary school across the street, the agency's hands are tied and it can select only one of those many violations to charge. And in addition to that, under Orton Motors' reading, the agency would... The policy arguments are compelling. What's the language of the statute that tells you that you can count violations the way that you're counting them? The Act authorizes the agency to charge a civil money penalty for violations of the tobacco sale restrictions. Now, each of those violations can be counted under the civil money penalty provision that Congress established. Orton is relying on the notice provisions in the Act to argue that the FDA cannot achieve the goal of protecting minors from the sale of tobacco. And it does that by relying on notice provisions that were aimed at a very particular concern, that concern being that agency inspectors would go into a tobacco retailer, observe a number of violations, say nothing whatsoever to the retailer, keep those violations in its hip pocket, go back a few months later, observe... But you're, to some degree, erecting a straw man here. Let's suppose what the inspector observes is someone who the inspector believes looks to be about, you know, 17 or 18 years old, asks to buy a pack of cigarettes. And the retailer sells, the employee sells it to that person without asking for identification. And the inspector subsequently learns that that person is indeed 17 years old. That's two violations, right? That's correct. They're two separate regulatory provisions. Because he didn't card them, and then the kid turned out to be 17 and not 18, right? That's correct. Which violation occurred first? In terms of the order of those violations, I don't know that it matters for the agency's authority to charge both of the violations because... Why doesn't it matter? The statute says that we go up from one violation to the next. How are we supposed to know which one is next if we don't know which one is first? Sure. And in the example of a miner purchasing tobacco from a retail park, I suppose the retail clerk must first ask for the identification to verify age under the regulations. If he fails to do that, you know, the person happens to be 13, doesn't ask for ID, he's violated one of the regulatory provisions, he then sells tobacco to the 13-year-old, he's violated a second, and it should come as no surprise. But the kid was 13 before he walked in, so isn't that the first violation? No, certainly being 13 isn't a violation in and of itself. Well, that violation was occurring before he refused to ask for ID. So it may help the court in terms of comparing when you have a sale to an actual miner, which of course is what the Tobacco Control Act is trying to regulate and restrict, to compare that to a clerk who, in similar circumstances, without asking for an ID, happens to sell to a 25- or 26-year-old. Now, that's only one violation of the regulations, and it makes sense that Congress would think if you were actually selling tobacco to a miner, which is what we are trying to prevent for very good public health reasons, that that would be two separate violations. Now, you could have two separate violations in a single transaction that didn't involve sale to a miner. For example, you might have a vending machine in a store that's open to miners where there are individual cigarettes for sale in the vending machine. You could have... But you could also have a situation where, within the scope of five minutes, an inspector is in the store, and three kids who are 16 years old, who are friends, get out of the car and come in, and each of the three buys some cigarettes. And that's six violations, right? And if there's a previous warning letter, then that retailer is subject to a no-tobacco-sale order based on that five-minute interaction, right? If I may, Your Honor, a few responses. First, I wanted to correct a misrepresentation about how the no-tobacco-sale order process works. To be assessed a no-tobacco-sale order, a retailer must commit five repeated violations of a particular restriction. So that would be, for example, there's an original violation in a sale of tobacco to a miner or in having a vending machine. An FD inspector comes back in. The same vending machine is there. Comes back in six months later, same vending machine. You have to have five repeated violations of a particular restriction within 36 months. And then the no-tobacco-sale orders that are sought, the initial order would be for 30 days. It's not a permanent order initially. It goes 30 days and then six months. But that's to correct that misimpression about no-tobacco-sale orders. The other response from a practical perspective, it ordinarily is the case that you have a tobacco inspector who goes in to conduct an underage buy with a miner who attempts to purchase cigarettes. And the inspector, when he does the visual advertising and labeling inspection, goes in. I mean, this isn't somebody who's hiding behind the bouncy paper towels in aisle number three, sort of waiting to spring up and see what he can find. The inspector announces himself, makes clear that an inspection is happening. All of that said, if an inspector walks into a retailer... Is any of that in this record? I'm sorry? Is any of that what you just said in this record? It's in the agency discussion in the guidance of how the inspections are conducted, yes. That's in the Q&A that is in the record in this case. But in addition, and more importantly, if an inspector walks in on a Tuesday and a clerk is selling to three 16-year-old kids, it's not as if that is an isolated incident, and that tobacco retailer should not be treated, as Orton Motor would have it, exactly the same as a tobacco retailer who has violated only one restriction. If you're selling to 16-year-olds on Tuesday, we can reasonably expect you were selling to 16-year-olds the Tuesday before and the Friday before that, and charging you, again, this is within a civil money penalty scheme that maxes out at $10,000 for a sixth or subsequent violation. That is compared to other violations. What if that was that clerk's first day on the job? If it's that clerk's first day on the job, under the statute, in assessing a civil money penalty, FDA is required to take into account issues including training programs, ability to pay, effect on the business. All of that is evidence that the tobacco retailer could put forward. But again, of course, if it's the first violation, the agency policy is to issue a warning letter. So as Orton Motor did in this case, the tobacco retailer gets a warning letter from the agency. It says, these are the restrictions of the tobacco sale requirements that you have violated. Correct these violations. We may come back, consistent with our statutory authority, and conduct a follow-up compliance check. You may be subject to civil money penalties if you continue to violate the tobacco sale restrictions. Orton Motor had that notice. The warning letter actually says more than that. It says that if you don't correct, we can impose further penalties without further notice, right? To be clear, the warning letter itself does not impose a penalty. But isn't that what the warning letter says? On page JA2, it says you should immediately correct the violations listed above. Failure to correct may result in FDA taking regulatory action, which may include a civil money penalty. And, of course, if you do not violate the tobacco sale restrictions again, all you have is a warning letter. There is no further action taken against you. But what does it mean to say that if you don't correct this notice when Orton got this, that failure to correct may result in further regulatory action without further notice, including a civil monetary penalty? What could they have corrected? If you have received this warning letter, you are under an obligation, as you were before, to comply with the tobacco sale restrictions. If the agency conducts a follow-up compliance check and finds that you are not complying, they may initiate an enforcement proceeding against you. In that enforcement proceeding- So your first answer to Judge Wilkins was different than this one. So let's assume that they issue the warning letter and nothing happens. They don't do a follow-up investigation. Then they can't impose any penalties, correct? That's the agency's policy, yes. That's what? Yeah. Is that true? That's correct. And it's only when an FDA inspector- When they do the second investigation, like in this case, could Orton have challenged the facts underlying the warning letter? Absolutely. Okay. And suppose it didn't want to wait that long. Could it have challenged the warning letter itself once it was issued? There's not a mechanism in place to challenge the warning letter itself, but the warning letter, again, is just that. So what about the provision in the statute that says they're entitled to, quote, an expedited procedure for the administrative appeal of an alleged violation? Isn't that what a warning letter is? That provision, the warning letter is a notification that these violations have been observed. An alleged violation. And there is an opportunity to challenge an alleged violation when it is attached to any penalty against the retailer. Well, that notice provision, as we discussed earlier, in conjunction with the other notice provisions, is aimed at the particular concern that the agency would act without giving any notice whatsoever. And what Congress said in those notice provisions- Wait, wait. Where is it? An alleged expedited procedure for the administrative appeal of an alleged violation. And your view is that's limited to what? That is when the agency seeks a- So this is in provision C. This is on page A1 of our addendum. Providing a hearing pursuant to the procedures established through regulations for assessing civil money penalties, which include the expedited procedure for administrative appeal of an alleged violation. So it is when the agency is assessing- But the sentence that follows that is an and. Pursuant to procedures established by the regs for assessing civil money penalties and an alleged, right? Is that what it says? No. So there's two verbs there. I'm sorry. I don't have the actual text here. It's on page- What does it just say? Could you just read it? It says providing for a hearing pursuant to the procedures established through regulations of the FDA for assessing civil money penalties, which the warning letter is not, including at a retailer's request, a hearing by telephone, or at the nearest regional or field office of the FDA, and providing for an expedited procedure for the administrative appeal of an alleged violation. And as I read that, what Congress instructed the agency to do was to use the ordinary procedures that it has in place for assessing civil money penalties, those are in regulations cited in our brief, to use those procedures for enforcement actions when it is seeking civil money penalties. Now, when the agency files its administrative complaint, those are alleged violations. The agency has not yet proved those violations, and it may be that there are alleged violations from an initial inspection for which no penalty would have been sought if the violations had been corrected. So how am I supposed to read 103Q2, Roman numeral 1, it says in the case of the first violation, zero dollars together with the issuance of a warning letter to the retailer. Right. So that's what happens with the warning letter, right? And the statute says that you get a warning letter in the case of the first violation. So the warning letter is not an alleged violation, it has been adjudicated or at least interpreted by the agency to be a violation, right? Well, two responses, if I may. First, the agency's regulations interpreting this provision, and that's of the 2015 CFR, it's 21 CFR 17.2, interpret these civil money penalties to start at the second violation, which is where the civil money penalty is assessed. And I'd also note that Congress, of course, if you look at the next provision there, in the case of a first violation where there is no approved training program, Congress allowed for a $250 penalty in those cases. So it's not that Congress didn't anticipate that an FDA inspector may walk in, see a violation, and that there may be a penalty that arises from that first violation. But it's not the case when you have an approved training program, which this is the program that FDA is currently operating under, you get no civil money penalty after that first alleged violation. Instead, you get a warning letter. Now, if Orrin Motor were correct that you would have a full-blown administrative hearing followed by judicial review, the result of which would be the issuance of a warning letter, then it wouldn't make sense for Congress to have included all of these other notice provisions in here. Of course, you get why would you need notice before a follow-up compliance check if you, in fact, have to go through an entire administrative proceeding before the agency can even issue a warning letter. You already have notice of that. Let me just make sure I understand how you believe that the statute should be interpreted. Let's suppose that a warning letter is issued for a sale to someone who appears to be under 26 and they weren't carded. Then they come back for a follow-up inspection and they find other alleged violations. At the hearing, at that point, if Orrin Motor has the tape and actually brings in the person who was the subject of that sale and it turns out that he was 27 and, therefore, they've proven that that wasn't a violation, then what happens with respect to the alleged violations from the follow-up inspection? I understand the specific question to be whether you would be able to chart or whether the agency would be able to count the follow-up violations if it turned out that the initial violation had not actually occurred. I'm not sure how the agency treats that exact scenario. There has to be an easy answer to that. The answer has to be that the agency can't count the act under the warning letter. That is certainly correct. If you prove that there was no violation... That's easy. Yes, thank you. So what's difficult then? Nothing. The retailer has... And I tried to make it more complicated than it was. The retailer has the opportunity at the hearing to challenge any of the violations alleged. And if the retailer comes forward with evidence to disprove that a violation occurred, of course that is not counted toward the civil money penalty. But how does that work with respect to the notice? You're saying that that doesn't, I guess, provide any sort of a defect in the notice provision, and they can still, if there are, let's say, three alleged violations that happened in this follow-up, they can't treat that follow-up inspection as if it were subject only to a maximum penalty of a warning, as if it were really your first inspection. I believe that's correct. Let me ask the question in a better fashion. I guess what I'm trying to understand is, let's suppose a letter was sent out, and it was sent out erroneously, right? Does that kind of wipe the slate clean, so to speak, so that if they come back, it's treated as if that warning letter had never occurred, and if it's proven that that warning letter was erroneous? Well, if a warning letter, for example, were issued to the wrong retailer, and the retailer says, I am not at this address, there's contact information for the agency in the warning letter. There's an email address, a phone number, very easy to call and explain, like, this is not actually me. That's sort of the first answer in terms of addressing an actual mistake in the warning letter. With respect to the violations alleged in the warning letter, again, as we've discussed, you have an opportunity to challenge all of that in a second hearing. It's going to depend on the facts of the case. The agency, as a matter of enforcement discretion, generally only counts one violation from an initial inspection. Can we just simplify this, please? Take this case. Suppose Orton had challenged, when it was assessed the 2015 penalty, it had challenged the facts underlying the 2013 warning and had proven that the person was 28 years old. Right? Yeah. Okay. Do you agree, then, that the agency could not go forward at all with a penalty based on the 2015 because Orton would not have been warned before that, correct? Right? Orton would not have been warned? Yeah, there would be no warning before the 2015. If there's no first violation, then the agency wouldn't come in and charge a second violation. That's not my question. My question is, suppose Orton had proven that the warning letter was inappropriate because the person was 27. All right? They proved that. Now, what are the consequences of that for what happened in 2015, for the additional violations in 2015? Right.  Because Orton was not properly, didn't receive a warning letter. Right, because the first time an actual violation occurred would have been in 20, the later violation, and there was no notice. No. Yes. Okay. Yes. Right? Yes. Okay. Does that add anything? You asked the question much better than I did. But then that raises to me the question of why then, well, I guess you can, if that's your answer to that question and that's the proper interpretation of the statute, then I guess it makes sense then to require the person to wait until the follow-up inspection and alleged violation to challenge the warning letter. Because my question was going to be, why shouldn't they have to challenge the warning letter immediately? But if you're conceding that that's the way that the statute works, then I don't have that concern anymore. That's correct. All right. Thank you. Okay, thank you. Did counsel have any time left? Counsel, we're not having time left. You can take two minutes. Thank you. Yeah. Well, first, I just wanted to address one issue that came up in the government's argument. The FDA's guidance, which inadvertently was omitted from the record and from the agenda that we produced to you, actually provides that with respect to a no-sale order, you can have multiple types of violations count towards the five repeated violations. What matters is that there's a predicate violation for each, so the guidance actually provides an example of an instance where there are four sales to a minor, two sales with a vending machine, and two instances of free samples being given out. As long as the first one of each of those violations is the predicate, and then the remaining violations would suffice to issue a no-sale order. So you're saying that if the warning was based on a sale to a 17-year-old and they didn't seek ID, and then there were three similar sales later on, then you could be subject to the no-tobacco sale? That's correct. And, again, we don't necessarily agree with the agency's interpretation of the statute there, but that is how it applies to the statute in issuing warning letters. In terms of if the panel doesn't have any more questions, then I believe we'll ask. Okay. You don't have to use your two minutes. Thank you. Thank you. The case is submitted.
judges: Tatel, Griffith, Wilkins